### Texas Telegraph & Telephone Company v. C. B. Thompson.

#### Decided June 1, 1910.

**1.—Negligence—Telephone Guy Wire.**

In case of plaintiff injured while riding at night by coming in contact with a guy wire of a telephone pole stretched in the limits of a public street and obstructing a way, formerly traveled, diverging from the street to cross a vacant block of private property, the evidence is considered and held to support findings of negligence on the part of the telephone company and absence of contributory negligence by plaintiff.

**2.—Damages.**

Evidence held to support a recovery of $1,200 for diminished earning capacity due to personal injury.

**3.—Damages—Mental Suffering.**

Though no witness testified that plaintiff suffered mentally, the fact might be inferred from proof of serious and painful physical injuries, and be properly submitted as an element of damages recoverable.

**4.—Pleading—Personal Injury.**

Allegations of injury to various parts and organs of plaintiff's person are held sufficient as against special demurrer.

Appeal from the District Court of Llano County. Tried below before Hon. Clarence Martin.

*Flack & Dalrymple* and *Geo. E. Shelley,* for appellant.—The allegations of plaintiff's first amended original petition, as to the injuries sustained by plaintiff to his arm, shoulder, hip, leg, back, spine, groin, stomach, kidneys, bowels, intestines and appendix, do not show in what manner or to what extent such parts and organs were injured with sufficient certainty to apprise defendant of the nature of such alleged injuries; and the petition containing no allegation that same could not be more particularly alleged, the court erred in overruling the defendant's special exception addressed thereto. Dallas, etc., Ry. Co. v. McAllister, 90 S. W., 934; Railway Co. v. Adams, 24 S. W., 839; Railway Co. v. Ison, 83 S. W., 408; City of Marshall v. McAlister, 43 S. W., 1043.

*F. J. Johnson* and *O. R. Seiter,* for appellee.—Plaintiff's allegations as to his injuries were sufficiently certain. Southwestern T. & T. Co.

v. Tucker, 98 S. W., 909; I. & G. N. R. R. Co. v. Tasby, 45 Texas Civ. App., 416.

KEY, CHIEF JUSTICE.—Appellee's brief contains the following correct statement of the nature and result of this suit: "Appellee instituted this suit in the District Court of Llano County, for damages alleged to have been occasioned him by reason of certain injuries alleged to have been sustained by him as a result of coming in contact with a guy wire attached to a certain telegraph pole of appellant and stretched in a public street in the city of Llano, at a distance of from six to nine feet from the abutting property line, and across an alleged roadway, at a point where said street and said roadway intersected, while plaintiff was riding horseback in said roadway and across said street. On May 12th, 1909, appellee recovered a judgment against appellant for the sum of $1,500, based upon a verdict of the jury awarding him $300 for 'mental anguish and physical pain,' and $1,200 for 'diminished earning capacity.' Motion for new trial was duly filed and overruled, and appeal perfected and the case is brought to this court for review."

The first two assignments of error complain of the action of the court in overruling the defendant's motion for a new trial, the contention being that the testimony failed to show that the defendant was guilty of negligence, and showed that the plaintiff was guilty of contributory negligence. Under those assignments appellant submits the following statement:

"The evidence showed that the alleged road was not a street or alley of the town of Llano, that on each side of the telephone pole and guy wire there was a well defined and commonly used road turning into Exall Street. It was undisputed that plaintiff lived in the neighborhood of the pole and guy wire in question for two years, and that the wire had been placed where it was about a year before the accident happened. Plaintiff testified that at the time of the accident, the night was not very dark and that he was riding at a pace faster than a gallop; that he did not see the telephone pole or look for it. Several other witnesses testified, and it was undisputed, that the pole in question and guy wire were opposite the middle of the block. Mr. Callahan testified that he knew where the guy wire in question was, and that a man on horseback could not ride under same; and that 'it has been nearly a year since the road was used; that is, since they put up the guy wire.' H. A. Holzer, witness for plaintiff, testified in part as follows: 'As to whether or not there is a road running underneath the guy wire, there has been a road there. There is no road there now. It has not been traveled, it don't look like to me, for a long time, you can not see any evidence of a road there now, not much.' George Brazeale, a witness for plaintiff, testified in part as follows: 'This seems to be rather the appearance of an old road having been washed out. There is no evidence of it having been traveled recently.'"

In the main, that statement is correct, but it should be supplemented by the following substantially correct statement contained in appellee's brief:

"Block 12 of the city of Llano is bounded on the north by Sexton Street and on the east by Exall Street, both of said streets being public streets of said city; at the time plaintiff was injured, and at the time of the trial, said block was unfenced and open and had been for many years, and was a commons. Sometime between six months and a year prior to the date of plaintiff's injuries, defendant placed a thirty foot pole in said Exall Street at a distance of from six to nine feet from the property line of said block (defendant's witness and employe Kuykendall testified from eight to nine feet) and stretched a guy wire parallel with said Exall Street from the top of said pole and fastened same to a 'dead-man' twenty-two feet south of said pole; said pole and wire were located practically opposite the middle of said block and three and a half blocks from the court house in said city. It was also uncontroverted that at the time plaintiff was injured, a well defined and commonly used wagon road extended diagonally, from northwest to southeast, across said block from Sexton Street and intersected Exall Street where said guy wire was erected—that is to say, that, at a distance of about 40 feet from said guy wire, said road diverged into three roads—the wire being erected directly over the middle road, one road going south of the middle road at a distance of between ten to fifteen feet, and the other road going north of the middle road at a distance of between twenty to twenty-five feet. In other words, there were three roads within a space of not over 40 feet with said guy wire in the center.

"It was an uncontroverted fact that the wire was stretched across said middle road at a height of between five to six feet at the first rut or track from the pole, and at a height of about ten inches from the further rut or track from the pole. It was uncontroverted that said middle road had been commonly and generally traveled by the public in vehicles and on horseback for many years up to the time said wire was stretched across it, since which time the travel was on both sides of said wire, as before stated, most of the travel swerving around the wire to the north.

"All of the witnesses, both for plaintiff and defendant, testifying in reference thereto, stated that said middle road at the time of the trial, (three months after plaintiff was injured) had the appearance of an old road; and there was much testimony adduced to the effect that even at the time of the trial said middle road was a plain, beaten and well developed wagon road with ruts, or deep wagons tracks in the rocky soil under the wire.

"It was uncontroverted that defendant did not have any light, guard or protection whatever on or by said wire at the time plaintiff was injured, and had not had since the erection of said wire. Plaintiff while going from his home to a fire on a horse in the night time rode against said wire and was injured. Plaintiff testified that he did not see the wire or look for it, and did not know it was there until he ran into it; that he went to town often, but that he did not go past said wire and pole when he went to town; that he had been using said road over which the wire was stretched for many years, and that on the night he was injured he knew that people traveling through that portion of the town commonly and generally traveled said road on

horseback and in vehicles, and he knew that same was a plain and well developed wagon road; that he was riding up said road at a gallop; at about 'half speed;' that he was going up a hill; that he was holding the reins in his hand; that it was not very dark; that it was a starlight night; that he is a stockman and an experienced horseback rider and was accustomed to riding at night.

"W. H. Walace, while traveling over the same course as plaintiff, about forty days before plaintiff was injured, testified that he rode his horse into said wire one night; that he was riding in a gallop and that the wire struck the horn of his saddle and he escaped without injury.

"P. H. Callahan testified that he was riding up said road in the day time, but saw said wire in time to avoid running into it. H. A. Holtzer testified that one night he and his wife drove into said wire. W. W. Watkins, defendant's witness, who lives within a block of where said wire was erected, testified that he did not know said wire was erected until the evening before the trial of this case."

The defense of contributory negligence was interposed and submitted to the jury, and the verdict involves findings that the defendant was guilty of negligence, and that the plaintiff was not guilty of contributory negligence. After due consideration of the testimony we have reached the conclusion that the findings referred to are sustained by testimony, and they are therefore adopted by this court, and the assignments of error now under consideration are overruled.

The next three assignments assail the verdict upon the contention that the award of $1,200 for diminished capacity to earn money is not supported by the testimony. Without setting out the testimony relating to that subject, we hold that it supports the verdict and overrule the assignments referred to.

Under other assignments appellant charges that the court should not have submitted to the jury the question of mental pain and suffering, and that the verdict, awarding the plaintiff $300 for such suffering is not supported by testimony. It is true that no witness testified that the plaintiff suffered mentally, but there was testimony showing that he sustained serious physical injuries, which caused much physical pain, and from those facts the jury was authorized to infer that he sustained mental suffering.

The last assignment complains of the action of the court in overruling a special exception to the following averments in the plaintiff's petition: "And plaintiff was then and there knocked and dragged by said guy wire backwards from off his horse and hurled with great force and violence to and against the hard ground, and plaintiff's horse was also then and there thrown by said guy wire with great weight and force upon plaintiff, as he lay helpless upon the ground, thereby so greviously crushing and shocking plaintiff as to render him unconscious, and seriously bruising, wounding and injuring plaintiff about his shoulder and arm, his hip and leg, and bruising, wrenching, crushing and permanently injuring plaintiff in the muscles, ligaments and parts in and about his back and spine, his groin and stomach and the internal organs thereof, to wit.: his kidneys, bowels, intestines and appendix."

We hold that the averments referred to were sufficient, and that the exception was properly overruled. (Southwestern T. & T. Co. v. Tucker, 98 S. W., 909; International & G. N. R. R. Co. v. Tasby, 45 Texas Civ. App., 416, 100 S. W., 1030.)

No reversible error has been pointed and the judgment is affirmed.

*Affirmed.*

Writ of error refused.